IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>vs.<br><br>BRIAN P. STIEREN,<br><br>                Defendant. | **8:12CR423**<br><br>**SENTENCING MEMORANDUM** |

This matter is before the court for sentencing. This memorandum opinion supplements findings made on the record at a sentencing hearing on September 19, 2013.

## I.  BACKGROUND

### A.  Facts

The defendant was charged in a two-count indictment with receipt of child pornography in violation of 18 U.S.C. § 2252A(a)(2) (Count I) and possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B) (Count II).[1]   Filing No. 1, Indictment.  He entered a plea of guilty to Count I of the Indictment.  Filing No. 27, Plea Agreement.  In the plea agreement, the United States ("the government") agreed to dismiss the possession charge.  *Id.*  The court accepted Stieren's plea of guilty but deferred acceptance of the plea agreement pending the preparation of a Presentence

---

[1] Specifically, he was charged in Count I of the indictment with knowingly receiving and attempting to receive depictions of a minor engaging in sexually explicit conduct, in violation of 18 U.S.C. § 2252A(a)(2), and in Count II with knowingly possessing one or more photographs and other matter which contained an image of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B).  Filing No. 1, Indictment.  The mandatory minimum sentence for receipt of child pornography (the crime charged in Count I) is five years and the maximum is twenty years.  18 U.S.C. § 2252A(b)(1).  In contrast, possession of child pornography (the crime charged in Count II) has no mandatory minimum and carries a maximum sentence of ten years for a first offender.  18 U.S.C. § 2252(b)(1).  The defendant was not charged with distribution.

Investigation Report (hereinafter, "PSR") by the United States Office of Probation (hereinafter, "the Probation Office") that calculated Stieren's sentence under the United States Sentencing Guidelines ("the Guidelines").  Filing No. 24, Minute Entry.

In the PSR, the Probation Office based its outline of the offense conduct on the prosecutor's version of events.  Filing No. 30,  PSR (sealed) at 4-5.  Pursuant to an investigation of peer-to-peer file sharing, investigators with the FBI Omaha Cyber Crimes Task Force obtained a search warrant seeking evidence of child pornography at the defendant's residence.  *Id.* at 4.  On March 7, 2012, law enforcement executed the warrant and seized laptop and desktop computers, an external hard drive, a USB drive, and miscellaneous VHS tapes, DVDs, and CDs.  *Id.* at 5.  A forensic review of the computer's hard drive and external drives revealed more than 320 videos of child pornography, 7 images and 103 videos of child erotica.  *Id.*  Under the Guidelines, the defendant is accountable for 24,007 images of child pornography (320 videos x 75 images/video = 24,000 + 7 images = 24,007 images of child pornography).[2]  *Id.*  The videos or images involved toddlers as young as 2 to 3 years of age involved in sexually explicit conduct and bestiality, bondage and torture of children.  *Id.*

The Probation Office determined that the defendant's base offense level was 22 under U.S.S.G. § 2G2.2(b)(2) for receipt of child pornography.  *Id.* at 6.  It found the following upward adjustments were applicable:  a two-level increase under U.S.S.G. §-2G2.2(b)(2) (for material containing a prepubescent minor); a two-level increase under U.S.S.G. § 2G2.2(b)(3)(F) (for using a peer-to-peer file sharing program to download pornography with no evidence to indicate that he understood the sharing

---

[2] The Guidelines count each video as 75 images.  *See* U.S.S.G. § 2G2.2, comment. (n.4).

function of the peer-to-peer program or that he is knowledgeable with regard to computers); a four-level increase under U.S.S.G. § 2G2.2(b)(4) (for material that portrays sadistic or masochistic conduct or other depictions of violence); a two-level increase under U.S.S.G. § 2G2.2(b)(6) (for use of a computer); and a five-level increase under U.S.S.G. § 2G2.2(b)(7)(D) (for more than 600 images). *Id.* at 7. The application of these enhancements results in an adjusted offense level of 37. *Id.* After subtracting three levels for acceptance of responsibility under U.S.S.G. § 3E1.1, Stieren's total offense level under the Guidelines is 34. *Id.*

The Probation Office assessed no criminal history points because the defendant had only been convicted of crimes that do not qualify for criminal history points under U.S.S.G. § 4A1.2(c)(1) and (c)(2) (speeding, leaving the scene of an accident, operating a vehicle without liability insurance, and reckless driving, for which he was fined). *Id.* at 8. At offense level 34 and criminal history category I, Stieren's range of imprisonment under the Guidelines is 151 to 188 months (roughly twelve-and-a-half to fifteen-and-two-thirds years) and his supervised release range is five years to life. *Id.* at 12.

At the hearing, the government accepted and adopted the PSR. The defendant had no objection to the report. The court accepted the PSR. The defendant orally moved for a deviation from the Guidelines range under 18 U.S.C. § 3553(a). He argued that the Guidelines are artificially inflated and that his psychological assessment indicates he has a low propensity for any future sexual violence. He also argued that there is a large variance across the nation in sentences that are imposed on these offenses and that most individuals are not being given guideline sentences. He argued for a sentence of 60 months, the statutory minimum. In support of the motion for a

variance, the defendant offered a psychiatric evaluation.  See Filing No. 29, Exhibit list, Ex. 101.

The government opposed the defendant's motion for a variance based on its contention that the defendant "ran" or absconded after the execution of the search, and also based on the content of the material he possessed.  It offered the forensic report in support of its position.  *Id.*, Ex. 1.  The government argued for a Guidelines sentence. The Probation Office recommended a sentence of 84 months (seven years).

Stieren is 37 years old.  Filing No. 30, PSR (sealed) at 2.  He attended college classes for two years.  *Id.* at 10.  He was employed from 2003 to 2012 as a driver for United Parcel Service, earning $3,000 per month.  *Id.*  He has never been married and has no children.  *Id.* at 9.  He uses alcohol sparingly and has experimented with marijuana, but has not used it in the last 10 years.  *Id.* at 10.

Mr. Stieren underwent a psychological evaluation.  *Id.* at 15-26; Ex. 101.  He was administered several psychological tests.  *Id.,* Ex. 101 at 1.  The clinical psychiatrist found the defendant has moderate to severe difficulties controlling urges to view pornography and his social judgment and comprehension of consequences is impaired. *Id.* at 5.  He is considered to be of average intelligence.  *Id.*  The psychologist indicated that sexual abuse the defendant experienced when he was very young possibly contributed to his behavior.  *Id.* at 11.

With respect to risk of sexual violence, the psychologist found that testing showed that Stieren has none of the factors that would suggest he is likely to either engage in sexual violence in the future nor to be a threat to society regarding pedophilia or attempts to become sexually involved with adolescent females.  *Id.* at 8.  Stieren's

summary risk rating was found to be "LOW." *Id.* In addition, the psychologist noted that he anticipated that the defendant would not reengage in viewing child pornography using a computer or other device in the future based on his comprehension of consequences and legal prohibitions. *Id.*

### B. LAW

#### 1. Sentencing

Because the Sentencing Guidelines are no longer mandatory, the range of choice in sentencing dictated by the facts of the case has been significantly broadened. *See United States v. Booker*, 543 U.S. 220, 260-61 (2005); *Gall v. United States*, 552 U.S. 38, 59 (2007); *Kimbrough v. United States*, 552 U.S. 85, 101 (2007); *Rita v. United States*, 551 U.S. 338, 349-50 (2007); *Cunningham v. California*, 549 U.S. 270, 286-87 (2007). District courts must "give respectful consideration to the Guidelines," but are permitted "'to tailor the sentence in light of other statutory concerns as well.'" *Kimbrough*, 552 U.S. at 101 (quoting *Booker*, 543 U.S. at 245-246).

In imposing a sentence, the district court must consider the factors set out in the Sentencing Reform Act at 18 U.S.C. § 3553(a), including the nature of the offense, history and characteristics of the defendant, the need to deter criminal conduct, and the need to protect the public from further crimes by the defendant. *See, e.g., Gall*, 552 U.S. at 41, 49-50 & n.6; *Booker*, 543 U.S. at 259-60; *Nelson v. United States*, 555 U.S. 350, 351-52 (2009) (per curiam). That statute "contains an overarching provision instructing district courts to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing." *Kimbrough*, 552 U.S. at 101 (quoting 18 U.S.C. § 3553(a)). The sentencing court must first calculate the Guidelines

range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors explaining any variance from the former with reference to the latter. *Nelson*, 55 U.S. at 351; *United States v. VandeBrake*, 679 F.3d 1030, 1040 n.7 (8th Cir. 2012) (explaining that the three steps in the post-*Booker* sentencing process are: (1) to determine the initial advisory guideline sentencing range, (2) to determine any appropriate departures (upward or downward) from the guidelines, and (3) to decide whether to vary from the advisory guideline range based on the factors set forth in § 3553(a), so long as such a variance is reasonable). A sentencing court may not presume that a sentence within the applicable Guidelines range is reasonable. *Id.*

In determining a sentence, the court can consider whether the guideline at issue exemplifies the Sentencing Commission's "exercise of its characteristic institutional role" which is "to formulate and constantly refine national sentencing standards, basing its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise." *Kimbrough*, 552 U.S. at 108-09; *Rita*, 551 U.S. at 349-50. In formulating most Guidelines, the Commission developed and used data on past practices and recidivism to establish offense levels for each crime, linked to a recommended imprisonment range, based on these sentencing statistics. *See* United States Sentencing Comm'n, *Fifteen Years of Guidelines Sentencing: An Assessment of How Well the Federal Criminal Justice System is Achieving the Goals of Sentencing Reform* 14, 72-73 (November 2004), available at http:// www.ussc.gov/Research_ and_Statisitics/Research_Projects/Miscellaneous/15_year_study/index.cfm ("Fifteen-Year Assessment") (last visited Oct. 2, 2013); U.S.S.G. § 1A.1, intro. comment., pt. A, 3;

*Kimbrough*, 552 U.S. at 96; *Gall*, 552 U.S. at 46 (noting that the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions").  When Guidelines are not the result of the Commission's exercise of its characteristic institutional role, such as when they are not based on any identified empirical approach, but are instead keyed to or guided by statutory directives, a court is not presented with the "ordinary case," in which "the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives'" and it is "not an abuse of discretion for a district court to conclude when sentencing a particular defendant" that application of the guideline "yields a sentence 'greater than necessary' to achieve §-3553(a)'s purposes even in a mine-run case."  *Kimbrough*, 552 U.S. at 109-110 (quoting *Rita*, 551 U.S. at 350); *see also Gall*, 552 U.S. at 46 n.2 (noting that not all Guidelines are tied to empirical evidence).

Both for policy reasons and because Congress had enacted mandatory minimum sentences, the Commission departed from past practices in setting offense levels for child abuse crimes and sexual offenses.  Fifteen-Year Assessment at 15, 72-73; United States Sentencing Comm'n, *The History of the Child Pornography Guidelines* 44-48 (October 2009), *available at* http://www.ussc.gov/Publications/Offense_Types/index.cfm ("Child Porn. History Rep't") (discussing the Commission's approach to setting a base offense level that corresponds to a mandatory minimum sentence) (last visited Oct. 2, 2013); Troy Stabenow, *Deconstructing the Myth of Careful Study: A Primer on the Flawed Progression of the Child Pornography Guidelines* (July 3, 2008), *available at* http://www.fd.org/navigation/select-topics-in-criminal-defense/sentencing-resources/

subsections/deconstructing-the-guidelines (unpublished comment) (last visited Oct. 2, 2013). The Guidelines for child exploitation offenses were not developed under the statistical approach, but were promulgated, for the most part, in response to statutory directives.[3]  *See* Child Porn History Rep't at 8–50 (discussing the various statutes related to child pornography that Congress has enacted since 1977); United States Sentencing Comm'n*, Report to Congress: Sex Offenses Against Children, Findings and Recommendations Regarding Federal Penalties* (June 1996), *available at* http://www.ussc.gov/Legislative_and_Public_Affairs/Congressional_Testimony_and_Reports/Sex_Offense_Topics/199606_RtC_Sex_Crimes_Against_Children/SCAC_Executive_Summary.htm (last visited Oct. 2, 2013)("1996 Rep't to Cong (Dec. 2012), *available at* http://www.ussc.gov/Legislative_and_Public_Affairs/Congressional_Testimony_ and_ Reports/Sex_Offense_Topics/201212_Federal_Child_Pornography_Offenses/index.cfm ("2012 Rep't to Cong."); *see, e.g.*, U.S.S.G. App. C, Vol. I, Amends. 435 & 436 (Nov. 27

---

[3] Over the years, Congress has passed numerous laws of increasing severity that regulate child pornography and exploitation of children.  *See, e.g.,* the Protection of Children Against Sexual Exploitation Act of 1977, *codified as amended* at 18 U.S.C. §§ 2251-2253; the Child Protection Act of 1984, *codified as amended* at 18 U.S.C. § 2253; the Child Protection and Obscenity Enforcement Act of 1988, *codified as amended* at 18 U.S.C. §§ 2251 & 2252(a); the Sex Crimes Against Children Act of 1995, *codified as amended* at 18 U.S.C. §§ 2251 & 2252; the Child Pornography Prevention Act of 1996, *codified as amended* at 18 U.S.C. § 2251 (extending the prohibition against child pornography to sexually explicit images that appear to depict minors but were produced without using any real children), *invalidated as unconstitutional* in *Ashcroft v. Free Speech Coal.*, 535 U.S. 234 (2002)), *& 2252A; the Protection of Children from Sexual Predators Act of 1998, codified as amended* at 18 U.S.C. § 2426; the Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act of 2003 ("PROTECT Act"), *codified as amended* at 18 U.S.C. § 2252B; the PROTECT Our Children Act, Pub. L. No. 110–401, § 304 (2008).  In late 2012, Congress enacted the Child Protection Act of 2012, which raised the statutory maximum term of imprisonment for possession of child pornography from ten to 20 years for defendants who possessed images of a prepubescent minor or a minor under 12 years of age. *See* P. L. No. 112–206, 126 Stat. 1490 (Dec. 7, 2012).  Sentencing Commission data shows that virtually all offenders (96.3%) possess images of minors who were prepubescent or under 12 years of age").  *See* United States Sentencing Comm'n, *Report to the Congress: Federal Child Pornography Offenses* (Dec. 2012) ("2012 Rep't to Cong.") at 312, *available at http://www.ussc.gov/Legislative_and_Public_Affairs/ Congressional_Testimony_and_Reports/Sex_Offense_Topics/201212_Federal_Child_Pornography_ Offenses/index.cfm.*

1991), 537 & 538 (Nov. 1, 1996); Vol. II, amends. 592 (Nov. 1, 2000), 615 (Nov. 1, 2001), 649 (April 30, 2003); Supp. Vol., amends. 651 (Oct. 27, 2003), 664 (Nov. 1, 2004).

The text and structure of the criminal child pornography statutes prohibit conduct across a spectrum of activity ranging from merely possessing child pornography to "mailing, transporting or shipping child pornography" to "knowingly receiving or distributing child pornography" to "knowingly reproducing, advertising, promoting, presenting or distributing" child pornography to "knowingly selling or possessing with intent to sell" child pornography.  18 U.S.C. § 2252A(a)(1)-(4).  The clear focus of this legislation and concomitant Guidelines revision is on the patent evils of child pornography and the new dimension that computer technology adds to those evils.  *See* Child Pornography Prevention Act of 1996, Omnibus Consolidated Appropriations Act, Pub. L. No. 104-208, § 121, 1996 H.R. 3610, 104th Cong., 110 Stat. 3009, 3009-26 (1996); *see also* notes following 18 U.S.C.A. § 2251; Child Porn. History Rep't at 30-31. In particular, amendments to the Guidelines reflect Congressional concerns that "pedophiles, including those who use the Internet, are using child pornographic and obscene material to desensitize children to sexual activity, to convince children that sexual activity involving children is normal, and to entice children to engage in sexual activity." U.S.S.G. App. C., Vol. 2, amend. 592 (Nov. 1, 2000); Child Porn. History Rep't at 30-31.  In drafting the Guidelines, the Commission was also interested in "how best to identify those offenders at the greatest risk of recidivism."  Child Porn. History Rep't at 37.  The primary victims of the crime of possession of pornography are the exploited children.  *See United States v. Rugh*, 968 F.2d 750, 756 (8th Cir. 1992).

The Commission noted in 2009 that "[s]entencing courts have also expressed comment on the perceived severity of the child pornography guidelines through increased below-guidelines variance and downward departure rates."   Child Porn. History Rep't at 54.   Notably, in recent years the average guideline minimum for non-production child pornography offenses has increased:  in fiscal year 2004—the last full fiscal year when the guidelines were mandatory and the first full fiscal year after the enactment of the PROTECT Act—the average Guideline minimum was 50.1 months of imprisonment, and the average sentence imposed was 53.7 months; by fiscal year 2010, as more cases were affected by the PROTECT Act's increased penalties, the average guideline minimum was 117.5 months of imprisonment, and the average sentence imposed was 95.0 months.  2012 Rep't to Cong. at 315-16.

The Commission addressed the obvious sentencing disparity between courts that follow the advisory Guidelines ranges that are recommended in § 2G2.1 and those who vary from it.  *See* 2012 Rep't to Cong. At 314.  The Commission noted that "as a result of recent changes in the computer and Internet technologies that typical non-production offenders use, the existing sentencing scheme in non-production cases no longer adequately distinguishes among offenders based on their degrees of culpability." *Id.,* Executive Summary at ii. The Commission explains:

> [F]our of the of six sentencing enhancements in § 2G2.2—those relating to computer usage and the type and volume of images possessed by offenders, which together account for 13 offense levels—now apply to most offenders and, thus, fail to differentiate among offenders in terms of their culpability. These enhancements originally were promulgated in an earlier technological era, when such factors better served to distinguish among offenders.  Indeed, most of the enhancements in § 2G2.2, in their current or antecedent versions, were promulgated when the typical offender obtained child pornography in printed form in the mail.

*Id.,* Exec. Summary at iii.  The Commission also states that "[a] variety of stakeholders in the federal criminal justice system, including the Department of Justice, the defense bar, and many in the federal judiciary, are critical of the current non-production penalty scheme."  *Id.* at xii.  The Commission, in agreement with the general consensus among stakeholders, believes that child pornography offenses are extremely serious, but it "also concurs with the many stakeholders who contend that the sentencing scheme should be revised to better reflect both technological changes in offense conduct and emerging social science research and also better account for the variations in offenders' culpability and their sexual dangerousness."  *Id.,* Exec. Summary at xix.

Further, the Commission also notes that stakeholders have voiced the criticism that "[t]here is no rational basis to treat receipt offenses (which carry a mandatory minimum five-year term of imprisonment) and possession offenses (which do not carry a mandatory minimum term of imprisonment) differently under the guidelines or penal statutes. Virtually all offenders who possess child pornography previously knowingly received it."  *Id.,* Rep't at 13; s*ee, e.g., United States v. Richardson,* 238 F.3d 837, 839-40 (7th Cir. 2001) (Posner, J.) (finding the distinction between receipt and possession offenses to be "tenuous" and "puzzl[ing]" because receipt is a logical predicate to possession— "possessors, unless they fabricate their own [child] pornography, are also receivers [at some earlier point in time]").  Importantly, the Commission "believes that Congress should amend the statutory scheme to align the penalties for receipt and possession offenses[,]" noting that its "review of over 2,000 non-production cases has demonstrated that the underlying offense conduct in the typical case in which an offender was prosecuted for possession was indistinguishable from the offense conduct

in the typical case in which an offender was prosecuted for receipt."  2012 Rep't to Cong., Executive Summary at xix, xx.  The Commission found "significant unwarranted sentencing disparities among similarly situated offenders based in large part on whether they were charged with possession or receipt."  *Id.* at xx, Rep't at 214–15.  The Commission unanimously recommends that Congress align the statutory penalties for receipt and possession.  *Id.,* Rep't at 329.  Further, "the Commission unanimously believes that, if Congress chooses to align the penalties for possession with the penalties for receipt and maintain a statutory mandatory minimum penalty, that statutory minimum should be less than five years."  *Id.*

The Commission concluded that "the current sentencing scheme results in overly severe guideline ranges for some offenders based on outdated and disproportionate enhancements related to their collecting behavior."  *Id.* at 321.  At the same time, the Guidelines scheme results in unduly lenient ranges for other offenders who are more culpable or dangerous.  *Id.*  For instance, the Commission found that, for 2010, the enhancements for possessing materials depicting prepubescent minors (§ 2G2.2(b)(2)), use of a computer (§ 2G2.2(b)(6)), and number of images (§ 2G2.2(b)(7)) applied in over 95% of all § 2G2.2 cases.  *Id.* at 209.  Approximately 70% of offenders who received a number-of-images enhancement received the maximum 5-level enhancement based on possession of 600 images or more.  *Id.* at 141.  The enhancement for possession of material portraying violence or sadomasochistic conduct applied in 74% of all § 2G2.2 cases.  *Id.* at 209.  Over the last decade, technological changes, such as the widespread use of P2P file-sharing networks, have changed the typical offender's profile.  *Id.* at 312–13.  In particular, the anonymous and

ready accessibility offered by new technologies means that the typical offender's collection has not only grown in volume but is also likely to include more of the worst kinds of material, including graphic sexual abuse of prepubescent children.  *Id.* at 316. Now, due to "dramatic technological changes that have greatly facilitated the commission of child pornography offenses," even "entry-level offenders" can easily acquire and distribute large quantities of child pornography.  *Id.* at 6, 149, 154, 312–13. The Commission recommends that the non-production Guideline should be revised to more fully account three factors:

> 1)  the content of an offender's child pornography collection and the nature of an offender's collecting behavior (in terms of volume, the types of sexual conduct depicted in the images, the ages of the victims depicted, and the extent to which an offender has organized, maintained, and protected his collection over time, including through the use of sophisticated technology);
>
> 2)   the degree of an offender's engagement with other offenders—in particular, in an Internet "community" devoted to child pornography and child sexual exploitation; and
>
> 3)   whether an offender has a history of engaging in sexually abusive, exploitative, or predatory conduct in addition to his child pornography offense.

2012 Rep't to Cong. at 320.

The fairness of the Guidelines is heavily dependent on fair and reasonably consistent charging policies in the Department of Justice.  Fifteen-Year Assessment at 23-24.   The Commission has acknowledged that often "the value of a mandatory minimum sentence lies not in its imposition, but in its value as a bargaining chip to be given away in return for the resource-saving plea from the defendant to a more leniently sanctioned charge."   United States Sentencing Comm'n, *Special Report to Congress: Mandatory Minimum Penalties in the Federal Criminal Justice System* 14-15 (August

1991) ("1991 Mand. Min. Rep't"), *available at* http://www.ussc.gov/Legislative_

and_Public_Affairs/Congressional_Testimony_and_Reports/Mandatory_Minimum_Pena

lties/199108_RtC_Mandatory_Minimum.htm (last visited Oct. 3, 2013). The

Commission also acknowledges that "[s]ince the power to determine the charge of

conviction rests exclusively with the prosecution for the 85 percent of the cases that do

not proceed to trial, mandatory minimums transfer sentencing power from the court to

the prosecution" and "to the extent that prosecutorial discretion is exercised with

preference to some and not to others," disparity is reintroduced into the system. 1991

Mand. Min. Rep't at 1; *see also* Fifteen-Year Assessment at 89 (noting that research

over the past fifteen years has "consistently found that mandatory penalty statutes are

used inconsistently in cases in which they appear to apply"); United States Sentencing

Comm'n, *Report to the Congress: Mandatory Minimum Penalties in the Federal Criminal

Justice System*, Executive Summary at xxxi (Oct. 2011) ("2011 Mand. Min. Rep't")

*available at* http://www.ussc.gov/Legislative_and_Public_Affairs/Congressional_

Testimony_and_Reports/Mandatory_Minimum_Penalties/20111031_RtC_Mandatory_M

inimum.cfm (last visited Oct. 2, 2013) ("The Commission's preliminary review of the

available sentencing data suggests that the mandatory minimum penalties for certain

non-contact child pornography offenses may be excessively severe and as a result are

being applied inconsistently."). The Commission acknowledges that widespread

sentencing disparities among similarly situated offenders in child pornography cases are

attributable in part to disparate charging practices. 2012 Rep't to Cong. at 13.

     Long terms of imprisonment for non-acting-out offenders have been strongly

attacked as unsound and as fundamentally deviating from the Guidelines' overarching

policy and expertise. *See, e.g., United States v. Dorvee*, 616 F.3d 174, 185-88 (2d Cir. 2010) (recognizing the district courts' post-*Booker* authority to vary from the Guidelines solely on policy disagreement, and encouraging courts to take discretion seriously in fashioning sentences for child pornography defendants, and stating that U.S.S.G. § 2G2.2 is "an eccentric Guideline of highly unusual provenance which, unless carefully applied, can easily generate unreasonable results"); *United States v. Henderson*, 649 F.3d 955, 960 (9th Cir. 2011) (holding that "district judges must enjoy the same liberty to depart from [the child pornography guideline] based on reasonable policy disagreement as they do from the crack-cocaine Guidelines discussed in *Kimbrough*); *United States v. Grober*, 624 F.3d 592, 609 (3d Cir. 2010) (finding district court had provided "a sufficiently compelling explanation for its policy concerns about § 2G2.2 and its justification for imposing a sentence outside the range § 2G2.2 recommended."); *United States v. Stone*, 575 F.3d 83, 97 (1st Cir. 2009) (expressing view that child pornography guidelines are harsher than necessary).[4]

---

[4] Numerous district courts have also determined that the Guidelines in child pornography cases are owed less deference than those for other offenses because the Guidelines for child pornography crimes are "largely the product of congressional directives, some of which the Sentencing Commission actively opposed, rather than Commission study and expertise." *United States v. Diaz*, 720 F. Supp. 2d 1039, 1042 (E.D. Wis. 2010); *see, e.g., United States v. Munoz*, No. 11-cr-167, 2012 WL 5351750, *4 (D. Minn. Oct. 30, 2012); *United States v. C.R.*, 792 F. Supp. 2d 343, 363–64, 478–82 (E.D.N.Y. 2011); *United States v. Cameron*, No. 1:09-cr-00024, 2011 WL 890502, *5–6 (D. Me. Mar. 11, 2011); *United States v. Diaz*, 720 F.Supp.2d 1039, 1041-43 (E.D. Wis. 2010); *United States v. Riley*, 655 F.Supp.2d 1298, 1304–05 (S.D. Fla. 2009); *United States v. McElheney*, 630 F.Supp.2d 886, 891 (E.D. Tenn. 2009); *United States v. Beiermann*, 599 F. Supp. 2d 1087, 1100 (N.D. Iowa 2009); *United States v. Phinney*, 599 F. Supp. 2d 1037, 1040 (E.D. Wis. 2009); *United States v. Grober*, 595 F.Supp.2d 382, 402 (D.N.J. 2008); *United States v. Doktor*, No. 6:08-cr-46, 2008 WL 5334121, *1 (M.D. Fla. Dec. 19, 2008); *United States v. Stern*, 590 F. Supp. 2d 945, 960-61 (N.D. Ohio 2008); *United States v. Johnson*, 588 F. Supp. 2d 997, 1003 (S.D. Iowa 2008); *United States v. Noxon*, No. 07-40152–01, 2008 WL 4758583, *2-3 (D. Kan. Oct. 28, 2008); *United States v. Ontiveros*, No. 07-CR-333, 2008 WL 2937539, at *8 (E.D. Wis. July 24, 2008); *United States v. Hanson*, 561 F.Supp.2d 1004, 1008-11 (E.D. Wis. 2008); *United States v. Shipley*, 560 F.Supp.2d 739, 744 (S.D. Iowa 2008); *United States v. Goldberg*, No. 05-CR-0922, 2008 WL 4542957, at *6 (N.D. Ill. Apr. 30, 2008).

## II.  DISCUSSION

### A.  Guideline Calculation

The court adopts the findings in the PSR.  Stieren's base offense level under the Guidelines is 22.  *See* U.S.S.G. § 2G2.2(a)(1).  The court finds the following adjustments are applicable:  a two-level increase under U.S.S.G. § 2G2.2(b)(2) for possession of material containing a prepubescent minor; a five-level increase under U.S.S.G. § 2G2.2(b)(3)(B) for an offense involving distribution for the receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain; a four-level increase under U.S.S.G. § 2G2.2(b)(4) for material that portrays sadistic or masochistic conduct or other images of violence; a two-level increase under U.S.S.G. § 2G2.2(b)(6) for use of a computer; and a two-level increase under U.S.S.G. § 2G2.2(b) for possession of between 10 and 150 images.  The court finds a downward adjustment for acceptance of responsibility is warranted.  Stieren's resulting offense level is 34.  At criminal history category I, Stieren's recommended sentencing range under the Guidelines is 97 to 120 months.  No departure is warranted.

### B.  Section 3553(a) Factors

Stieren's motion for a deviation or variance from the Guidelines is granted.  The court finds a sentence outside the Guidelines is warranted in this case.  The court finds a sentence of 60 months, followed by a period of supervised release for five years is adequate to fulfill the goals of sentencing in this case.

The court finds there is not sufficient evidence in the record to show that the defendant tried to elude authorities between the search of his house in December of 2012 and his arrest roughly two months later.  Accordingly, the court will not consider

arguable flight as a factor in his sentencing.  The nature of the images that the defendant possessed is the government's ostensible justification for offering a plea to receipt, which has a mandatory minimum sentence, as opposed to offering a plea to the possession charge that does not.  The court is constrained to sentence the defendant to the mandatory minimum and finds that no further enhancement of his sentence should be based on the nature of the images.

With respect to the nature and circumstances of the offense, the court finds that possession and distribution of child pornography are forms of sexual exploitation and are serious offenses.  Sexual exploitation offenses include the production of child pornography and the exploitation of children for the purposes of prostitution or the production of pornography, as well as trafficking in pornography.  Criminalizing the possession of child pornography is a necessary complement to laws banning distribution of such items, and is intended to destroy the market for exploitation of children.  Stieren's conduct falls at the low end of the continuum of criminal conduct— from possession to distribution to production to predatory abuse—that exploits children. A possessor of child pornography is the least culpable in the chain and is a marginal player in the overall child exploitation scheme.

The varying levels of participation and blameworthiness in connection with distribution are meant to be accounted for in the Guidelines' market-oriented scheme. The statutes criminalizing the possession and distribution of child pornography are aimed at the widespread and profit-driven dissemination of child pornography that the Internet facilitates and fosters.  Although file-sharing arrangements contribute to Internet trafficking in child pornography, there is a qualitative difference between sharing one's

17

computer files and selling child pornography for profit.  Because he is not engaged in a profit-making enterprise, Stieren is not in the same class as a large-scale distributor of child pornography.   There has been no showing that Stieren possessed child pornography in order to entice a child, had any improper contact with children, photographed minors engaged in sexual conduct, or made attempts to contact a child.

In determining this sentence, the court has considered Stieren's history and characteristics.  There is some indication that Stieren may have been subjected to sexual abuse as a child, which may have contributed to his actions and must be considered in determining his culpability.  Importantly, psychological testing shows that he is at low to moderate risk to reoffend and at even lower risk to commit acts of sexual abuse.  Further, although the science in this area is not as definitive as the court would like it to be, there is no indication that Dr. Bertinetti's psychological testing or conclusions are inappropriate or unreliable.

The court has consulted the Guidelines and has used the Guidelines calculation as its initial starting point.  However, the child pornography Guidelines are driven by Congressional directive and are not grounded in any scientific, statistical, or empirical method.  The advice imparted in the Guidelines does not reflect the sort of empirical data, national experience, and independent expertise that characterize the Sentencing Commission's institutional role.  Given the acknowledged flaws in the Guidelines' scheme for punishment of Internet child pornography crimes, the court does not accord a high degree of deference to the Guidelines.  It is difficult to defer to the Commission's Guidelines when even the Commission believes they are flawed.

It is clear that the Sentencing Commission diverged significantly from its studied, empirical approach in formulating the Guidelines that apply to Stieren's case and the result is a recommended sentence that is greater than necessary to provide just punishment.  Although downloading child pornography is hardly a harmless activity, it is not the equivalent of direct physical abuse or sexual molestation of children, or production of pornography involving children.

The court has also considered the need to avoid sentencing disparities, but is not persuaded by the comparison to the sentences imposed on other child pornography offenders in this district.  It is the court's duty under *Booker* and progeny to make an individualized assessment with respect to this defendant.  The court agrees with the Sentencing Commission that the problem with the Guidelines for non-production offenses is that the Guidelines do not help the court distinguish between run-of-the-mill offenders and the worst offenders.  The Sentencing Commission has acknowledged that enhancements that were originally intended to apply to only those offenders who committed aggravated child pornography offenses are now being applied routinely to most offenders.

The Guidelines' sentencing scheme for child pornography crimes illogically skews sentences for "average" defendants to the upper end of the statutory range, regardless of the particular defendant's acceptance of responsibility, criminal history, specific conduct, or degree of culpability, thus blurring distinctions between the least culpable and the worst offenders.  In the context of this and other Internet child pornography crimes that involve peer-to-peer networks, the Guidelines provide little distinction between a low-level distributor and a high-level distributor and no distinction

between one who merely possesses and those who "receive," as opposed to "distribute." In this court's experience, there is essentially no Internet child pornography offender who could end up with a Guidelines-recommended sentence that falls at or close to the low end of the statutory range for either a possession or receipt offense. With the base offense level for receipt at 22, and the base offense level for possession at 18, and a two-point enhancement for use of a computer that is applied in every Internet child pornography case, only an offender who possessed fewer than ten images that did not contain any of the images of prepubescent minors or sadistic or masochistic acts that are widely prevalent in child pornography could receive a sentence at the low end of the statutory range. Because of the nature of peer-to-peer file-sharing programs, a simple possessory crime evolves into a case that can be charged under the receipt prong of a receipt and distribution offense as soon as someone accesses a shared file. In virtually every child pornography prosecution, the application of numerous and severe enhancements results in a Guidelines sentencing range whose low end is close to the statutory maximum and in some cases, exceeds it. In this case, as in most, a fairly typical offender with an insignificant criminal history has a recommended Guidelines imprisonment range that is close to the statutory maximum.

Stieren is subject to enhancements for use of a computer and for the number and type of images that apply in virtually every case. The Internet has become the typical means of obtaining child pornography, and Internet child pornography cases are essentially the only kind of child pornography crime prosecuted in federal court. The enhancements for use of a computer and number of images lack value as a reliable proxy for culpability and are a poor gauge of relative levels of fault between offenders.

Because of the unfortunate ease with which large numbers of images can be accessed and stored, most child pornography offenders are subject to enhancements from two to five levels for the number of images.

In this type of distribution scheme, the number of images does not provide the distinction between a large-scale and a small-scale child pornography purveyor that Congress and the Sentencing Commission must have envisioned when promulgating this market-based and quantity-driven scheme. For example, in contrast to drug quantity in a drug-trafficking prosecution, where the amount of a drug a defendant possesses may have some correlation to his position in a distribution hierarchy, the number of images a defendant possesses is meaningless as an indicator of any position in a pornography distribution system. The images can be endlessly replicated. Whatever connection there may be between a defendant's relative guilt and the number of images he possesses, an enhancement of five levels for possession of over 600 images overstates that connection. Moreover, the enhancement for number of images tops out at a five-level increase for more than 600 images. In this court's experience, the number of images possessed or distributed usually measure in the thousands. The number of images enhancement is not rationally connected to the conduct at issue.

The court finds that the ranges of imprisonment recommended under the Guidelines may be appropriate for a sexual predator, but are not a reliable appraisal of a fair sentence in this case. The statutes criminalizing the possession of child pornography, as amended over time, and as interpreted by the Sentencing Commission in formulating Guidelines, are clearly aimed at the widespread and profit-driven dissemination of child pornography that the Internet facilitates and fosters. The history

of legislative enactments in this area reflects Congressional concern with the use of computers to lure or entice children into sex acts.  Possession of child pornography was criminalized in part because of concerns that the Internet facilitated access to and enticement of minors for sexual exploitation, as well as concerns that pedophiles use the materials to desensitize and entice victims.  This case involves no such conduct.  The legislative history also shows Congressional concern with dangerous child abusers and repeat offenders.  The defendant is neither.

Enhancements of increasing severity for quantity and for recidivism are aimed at the most dangerous of child pornography offenders.  The Guideline at issue, § 2G2.2, consists of a hodgepodge of outdated enhancements that apply in nearly every case, rather than furnishing means to carefully differentiate between offenders based on culpability and dangerousness.  Again, Stieren does not fall into the category of the most dangerous child pornography offenders. [5]  The defendant has perhaps the least clinical evidence of potential for recidivism that the court has encountered.  There is no evidence that he has, or is likely to, abuse children. On the culpability spectrum of increasingly serious child exploitation offenses, Stieren is an example of a defendant who deserves no more than the statutory minimum sentence, given the fact that his conduct is comparable to that of a mere possessor of child pornography and he is being sentenced for receipt.

---

[5] The defendant would be at the low end of the spectrum even if the court were to consider the factors that the Sentencing Commission now recommends.  The content of the defendant's collection and the nature of his collecting behavior (in terms of volume, the types of sexual conduct depicted in the images, the ages of the victims depicted, and the extent to which an offender has organized, maintained, and protected his collection over time, including through the use of sophisticated technology) does not appear to be out of the ordinary; the degree of his engagement with other offenders—in particular, in an Internet "community" devoted to child pornography and child sexual exploitation has not been shown to be unusual; and he has no history of engaging in sexually abusive, exploitative, or predatory conduct in addition to his child pornography offense.

As noted, Stieren was originally charged with a violation of both 18 U.S.C. § 2252A(a)(2), receipt of child pornography, and § 2252(a)(4)(B), possession of child pornography.  There is no principled distinction between receipt and possession, given technological realities.  This case illustrates the dilemma facing defendants charged with both section 2252A and section 2252 offenses.  To obtain pornography via the Internet, it is generally necessary to receive the pornography in order to possess it.  The Sentencing Commission acknowledges that both charges are oftentimes supported by the same conduct.  The increased dangers and harms that make distribution a more serious crime than possession are accounted for in the statutory scheme by the mandatory minimum sentence provided in section 2252A, and need not be augmented by Guidelines enhancements that make any distinction between possession and distribution illusory.  Punishing mere possession (under the rubric "receipt") at the same level as distribution has the potential to trivialize the distinction.

Under the plea agreement herein, the government agreed to dismiss the less serious charge.  In offering a plea agreement that carries a mandatory minimum sentence of five years and recommending a Guidelines sentence, the government relied on its contention that the defendant "ran" and on the nature of the materials.  The court found the evidence did not establish that the defendant absconded and it is difficult to make a qualitative distinction with respect to the relative depravity of the materials other than to note that the materials are already accounted for in the plea to the charge with the mandatory minimum sentence.

The court finds that the Guidelines range of roughly twelve to fifteen years' imprisonment is completely out of proportion to the defendant's culpability in this case.

The Guidelines range is based on the imposition of numerous and excessive enhancements for circumstances that appear in nearly every child pornography case (such as use of the Internet, amassing numerous images, possessing images of prepubescent minors, and depictions of violence) on a first-time offender with no allegations of distribution.   The Guidelines-recommended sentence is greater than necessary to protect the public and to deter Stieren from reoffending.  A sentence of five years is appropriate to achieve the goals of sentencing in this case.  From a progressive discipline perspective, five years in jail is a significant term of imprisonment for an offender who has never been incarcerated at all.

The mere fact of the prosecution of these cases arguably deters others from engaging in this sort of conduct, but much of that market is driven by compulsive behavior that arguably will not be deterred in any event.  The deterrent effect of a lengthy sentence is further lessened by the international market for child exploitation offenses.  The court finds any additional deterrent value of a longer sentence would be marginal.  Further, to the extent that harsh punishment is necessary to deter harm to children, punishing a less-culpable offender as harshly as the worst does not satisfy the goals of sentencing and encourages disrespect for the law.

The court further finds that an outside-the-Guidelines sentence will respect the distinction between Stieren's culpability and the far greater culpability of a distributor or producer of child pornography or an actual predator or abuser.  The sentence imposed on a possessor of child pornography should be proportional to and significantly lower than a sentence for a distribution crime or exploitative crime that involves acts of abuse by a defendant.  Under the Guidelines scheme, a person who views child pornography

on the Internet can receive a longer sentence than the actual perpetrators of child abuse and those who commit serious drug crimes, assaults and even murder. This sentence is relatively proportional to the median sentences for defendants who have engaged in more serious child sexual exploitation crimes such as production of child pornography, travel to engage in sexual conduct with a minor, or sexual abuse of minors.

In light of all the § 3553(a) factors, where the defendant is convicted of a non-production child pornography offense, has a low potential for recidivism, has no significant prior criminal history, and appears genuinely remorseful about his crime and aware of the harm that it caused, a sentence of 60 months' imprisonment will promote respect for the law and afford an adequate level of deterrence to similar criminal conduct. In addition to the 5-year prison sentence, the court will impose a 5-year period of supervised release following incarceration, which will include terms and conditions designed to promote the safety of the public. The public will be adequately protected by supervised release with strict conditions and by the provision of mental health treatment and sex offender treatment to Stieren.

### III.  CONCLUSION

The current Guidelines are not a reliable indicator of the Sentencing Commission's view of what a fair sentence should be in non-production child pornography cases. This has been made obvious by the Commission's December 2012 report, criticizing § 2G2.2 and recommending major revisions to the Guidelines. Based upon application of the § 3553(a) factors to the circumstances unique to this case, the court finds that a sentence of 60 months' imprisonment, followed by 5 years of

structured supervised release, is sufficient, but not greater than necessary, to comply with the purposes of sentencing.

IT IS ORDERED:

1.      The defendant's oral motion for a variance is granted.

2.      A Judgment and Commitment and a Statement of Reasons in conformity with this Sentencing Memorandum, and with the court's findings at the sentencing hearing, will issue this date.

DATED this 7th day of October, 2013.

BY THE COURT:


s/ Joseph F. Bataillon          
United States District Judge